# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br><br>Thomas Robert Page,<br><br>            Defendant. | Case No. 15-cr-284 (DWF/SER)<br><br><br><br>**REPORT AND RECOMMENDATION** |

Manda M. Sertich, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for United States of America

Andrew H. Mohring and Manvir K. Atwal, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for Thomas Robert Page

HILDY BOWBEER, United States Magistrate Judge

This matter is before the undersigned for an assessment of probable cause for a search warrant as requested in Defendant Thomas Robert Page's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 44]. Because the search warrant was issued by United States Magistrate Judge Steven E. Rau, who is the magistrate judge assigned to the case, this Court will address the motion to suppress. As set forth below, the Court recommends that the motion to suppress evidence be denied.

I.      **Procedural Background**

On October 21, 2015, a United States Grand Jury charged Defendant Thomas Robert Page by Indictment with three counts of Engaging in Illicit Sexual Conduct in Foreign Places, in violation of 18 U.S.C. § 2423(c).  (Indictment at 1-3 [Doc. No. 4].) On January 6, 2016, Page filed a motion to suppress physical evidence seized pursuant to a search warrant on the ground that the supporting affidavit did not establish probable cause for the warrant.  (Def.'s Mot. Suppress at 1 [Doc. No. 44].)  The Government opposed the motion.  (Gov't's Resp. at 8 [Doc. No. 48].)

Magistrate Judge Rau held a hearing on the motion to suppress and Page's other pretrial motions on January 20, 2016.  (Ct. Minutes [Doc. No. 50].)  The Government introduced the search warrant and supporting affidavit into evidence as Government Exhibit 1, and Page requested a four-corners review of the affidavit for probable cause. Neither Page nor the Government requested or offered oral argument on the motion at the hearing before Judge Rau.

II.     **The Search Warrant and Supporting Affidavit**

The search warrant at issue was signed on September 25, 2015, by Magistrate Judge Rau.  (Gov't Ex. 1 at 1.)  Department of Homeland Security (DHS), Homeland Security Investigations (HSI), Special Agent Summer Jones provided the affidavit in support of the warrant.  The Court recounts here only the most relevant facts set forth in the twenty-three page affidavit.

Agent Jones's job responsibilities and training as a DHS agent include investigating crimes involving the sexual exploitation of children.  (Gov't Ex. 1, Jones

Aff. ¶ 2.)  Through Agent Jones's experience and training, she is familiar with how child pornography distribution networks and child pornography possessors utilize computers and social media.  (*Id.*)  She also understands the techniques child molesters use to groom their victims.  (*Id.*)  Individuals use social media sites like Facebook to send personal information, post pictures, and generally communicate with other people.  (*Id.* ¶¶ 51, 52.)

HSI agents began investigating Page for various child exploitation crimes beginning in June 2012, and in July 2012, travelled to Lome, Togo, to continue the investigation.  (*Id*. ¶¶ 6, 8.)  During that time, Page lived and worked as a teacher abroad, but maintained a summer home in Winona, Minnesota.  (*Id.* ¶ 5.)  On July 24, 2012, when HSI agents were investigating in Lomé, Page was arrested by the police in Togo as a result of another investigation of allegations of sexual abuse of minor boys, and he was taken to a local police station.  (*Id*. ¶ 9.)  The next day, HSI agents conducted a Mirandized interview of Page.  (*Id.* ¶ 10.)  Page admitted that he knew some boys from the local area, and that some of the boys would come over to his house.  (*Id*. ¶ 11.)  Page further admitted that some of the boys would stay overnight, but not in his bedroom, and that he would swim with them in his boxer shorts.  (*Id.* ¶ 12.)  He said the boys would sit on his lap at the beach, but he denied any sexual conduct.  (*Id*.)

HSI agents asked Page about some previous charges that had been brought against him in Cameroon.  (*Id*. ¶ 13.)  Page initially denied those allegations, but eventually admitted that he had engaged in oral sex with two Cameroonian boys.  (*Id*. ¶¶ 13,14.)  He also admitted that he had given money to the boys and their parents.  (*Id*. ¶ 14.)

In 2015, HSI agents returned to Cameroon to interview more witnesses and

3

alleged victims. (*Id.* ¶ 29.) At that time, two of the three alleged victims, S.A. and J.C.M., were seventeen years old, and the third alleged victim, A.E., was twenty years old.[1] (*Id.* ¶ 30.) During his interview, A.E. said that he met Page around 2009 at a shop where drinks were sold. (*Id.* ¶ 32.) A.E. explained that boys would go to Page's house for food, where Page gave them drinks, showed them pornography, and caressed them. (*Id.*) A.E. said that Page made him perform oral sex on Page, and that Page would use lubricant to "penetrate" him. (*Id.* ¶ 33.) According to A.E., this conduct occurred from the time A.E. was thirteen or fourteen years old until he was sixteen years old. (*Id.*) A.E. stated that much of the abuse was performed after Page made promises to the boys, such as paying for their schooling. (*Id.*)

During HSI's interview of S.A., S.A. stated that he met Page through his older brother Elvis, who lived and worked with Page as a cook. (*Id.* ¶¶ 20, 34.) S.A. said that he sometime slept naked in Page's bed. (*Id.* ¶ 34.) He told the agents that one night Page performed oral sex on S.A. and made S.A. perform oral sex on Page. (*Id.*) On another occasion, Page performed anal sex on S.A. and made S.A. perform anal sex on Page. (*Id.*) S.A said he was eleven or twelve years old when this conduct occurred. (*Id.*) S.A. stated that he still received money from Page and communicated with Page via Facebook. (*Id.* ¶ 35.)

The third alleged victim HSI agents interviewed was J.C.M., who disclosed that Page took naked pictures of the young boys who went to his house. (*Id.* ¶ 38.) J.C.M.

---

[1] At the time of the alleged abuse, which occurred between 2007 and 2010, A.E. was approximately between twelve and fifteen years old, and S.A. and J.C.M. were between nine and twelve years old.

stated that Page penetrated J.C.M.'s anus with his fingers. (*Id.* ¶ 39.) J.C.M. said that when Page asked the boys to perform sexual acts, he would promise them things such as trips and money. (*Id.* ¶ 40.)

HSI agents also interviewed a friend and coworker of Page, Hadison Nfor, who worked at the American School of Yaoundé as an IT specialist. (*Id.* ¶ 42.) Nfor stated that he still communicated with Page via Facebook, and he showed the agents a Facebook Messenger exchange between him and Page. (*Id.*) Nfor also stated that Page had asked him if anybody had spoken with him about Page. (*Id.*)

On May 29, 2015, HSI agents "inspected" Page when he returned from Bahrain, where he had been teaching. (*Id.* ¶ 43.) During "the inspection," the agents observed that Page received several private Facebook messages from students asking for money to pay for exams. (*Id.*)

Based on the foregoing and the other facts set forth in the affidavit, Agent Jones believed that Page's Facebook account would contain evidence corroborating S.A.'s statements that Page paid for some of his schooling and continued to send him money, corroborating Nfor's statement that Page expressed concern over people asking about his activities, and containing other communications between Page and minors. (*Id.* ¶ 45.)

### III. Discussion

The sole ground for suppression presented in Page's motion was that Agent Jones's affidavit did not provide probable cause for the warrant to search Page's Facebook account.

The Fourth Amendment protects "[t]he right of the people to be secure in their

5

persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.  To that end, every search warrant must be supported by probable cause, supported by a sworn affidavit, and describe with particularity the place to be searched and the items or persons to be seized.  *Id.*  The task of a judge presented with a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  As the very term implies, probable cause "deal[s] with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  *Id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

   A court reviewing a previous determination of probable cause must give "great deference" to the issuing judge's assessment.  *Id.* at 236 (quotation omitted).  If the issuing judge "relied solely on the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quotation omitted).  The affidavit must establish a "nexus . . . between the item to be seized and criminal behavior."  *Warden v. Hayden*, 387 U.S. 294, 307 (1967).  There must also be a nexus between the contraband and the place to be searched.  *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).  "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence."  *Etheridge*, 165

F.3d at 657.

The Court finds here that Agent Jones's affidavit established probable cause to believe that evidence of engaging in illicit sexual conduct in foreign places, or contraband or fruits of such conduct, would be found on Page's Facebook account.  The affidavit described Agent Jones's training and experience in investigating child pornography and child exploitation, and how child molesters use specific techniques to groom future victims, such as buying them gifts, spending time doing fun activities, and becoming their friend.  The affidavit also described the agent's investigation of Page from 2012 to 2015 and the HSI interviews of Page's alleged victims and friend.  Three boys told HSI agents of sexual conduct with Page.  The affidavit relayed that the boys used Facebook to communicate with Page and that they often used Facebook to discuss him giving them money for clothes or schooling.  The affidavit also described how Page used Facebook to communicate with his friends, at one point expressing concern over whether anybody had spoken with them about Page.  Based on the averments made in the affidavit, the Court concludes there was a fair probability that contraband or evidence of a crime would be found in information associated with Page's Facebook account.

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Thomas Robert Page's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 44] be **DENIED**.

Dated:  February 2, 2016           s/ *Hildy Bowbeer*
                                   HILDY BOWBEER
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.